**UNITED STATES of America**

v.

**Jesse KITHCART, Appellant**
**No. 99–1082.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) Sept. 14, 1999

Opinion Filed: June 28, 2000

Maureen Kearney Rowley, Chief Federal Defender, David L. McColgin, Assistant Federal Defender, Supervising Appellate Attorney, Federal Court Division, Defender Association of Philadelphia, Philadelphia, PA, Attorneys for Appellant.

Michael R. Stiles, United States Attorney, Walter S. Batty, Jr., Assistant United States Attorney, Chief of Appeals, Howard L. Perzan, Assistant United States Attorney, Philadelphia, PA, Attorneys for Appellee.

Before: MANSMANN and McKEE, Circuit Judges, and STAPLETON, Senior Circuit Judge

## OPINION OF THE COURT

McKEE, Circuit Judge.

On July 25, 1995, Bensalem Township Police Officers seized a gun from the per-

son of Jesse Kithcart after they stopped the car he was riding in. Kithcart was thereafter prosecuted for federal weapons violations, and following denial of a suppression motion, he conditionally pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Kithcart then appealed the district court's denial of his suppression motion. We reversed the district court's suppression ruling and remanded the matter back to the district court. With one panel member concurring and dissenting, we held that the district court had erred in concluding that police had probable cause to search Kithcart. *United States v. Kithcart,* 134 F.3d 529 (3d Cir.1998) ("*Kithcart I*").

On remand, the district court allowed the government to reopen the suppression hearing and present additional testimony.[1] However, the court neither requested, nor received any explanation as to why the testimony that was introduced upon remand had not been introduced originally. At the conclusion of the reopened hearing the court upheld the search based upon its finding that the car Kithcart was riding in ran a red light, and Kithcart again appeals.

We hold that the district court erred in allowing the prosecution to open the record and present additional testimony. We will therefore once again reverse and remand.[2]

## I. BACKGROUND

### A. The First Suppression Hearing.

In *Kithcart I*, we summarized the facts adduced at the original suppression hearing as follows:

> On July 25, 1995, Bensalem Township Police Officer Teresa Nelson was assigned to a radio patrol car on the evening shift. Over the course of an hour, Officer Nelson received three radio transmissions, each reporting an armed robbery. The first two robberies occurred at motels in Bensalem Township, and the last transmission concerned a robbery in neighboring Bristol Township. The final report—which was received at approximately 10:43 p.m.—did not specify either the time or location of the Bristol robbery. Bristol is north of, and adjacent to, Bensalem Township.

> The alleged perpetrators of these robberies were described as "two black males in a black sports car." It was also reported that one of the perpetrators might have been wearing white clothes, and the vehicle was described as a "possible Z–28, possible Camaro."

> At 10:53 p.m.—approximately ten minutes after receiving the final radio transmission regarding the Bristol robbery—Officer Nelson spotted a black Nissan 300ZX, which she described as a sports car, traveling south on Route 13, approximately a mile or less from the boundary of Bristol Township. The vehicle was driven by an African–American male who appeared to be the only person in the car. Officer Nelson testified that since the time when she received the first radio transmission more than an hour earlier, this was the first occasion when she spotted either a black vehicle or a black male driving a car. Officer Nelson also testified that immediately after she pulled up behind the vehicle, which had stopped at a red light, the driver drove the Nissan through the red light. Officer Nelson then flashed her dome lights, and the Nissan pulled over to the side of the road. At this point, Officer Nelson saw two sets of arms raised toward the roof of the car, and she realized that there were two people in the car.

---

1. The judge who originally presided was no longer on the district court so a different judge heard the matter on remand.

2. Because we reverse, we need not address Kithcart's claim that the government's additional evidence still did not establish grounds for a legal search or seizure.

Officer Nelson then called for backup and waited in her patrol car until Officers Christine Kellaher and Bill Williams arrived at the scene. Officer Williams found a gun in Kithcart's white nylon waist pouch, and Officer Kellaher found a gun under the driver's seat.

134 F.3d at 529–30.

Officer Nelson was the only witness who testified at the original suppression hearing. The government did not attempt to call either Officer Kellaher or Officer Williams; nor was there any discussion of, or explanation for, their absence. *Id.* at 531 n. 2. Carl Green—the driver of the car that Kithcart was riding in—entered into a cooperation agreement and was available to testify. However, he was not called as a witness either though both sides stipulated to what his testimony would be if he were to testify. The district court was made aware of that stipulation before the conclusion of the first suppression hearing. *Id.*

During his "cooperation sessions" Green had told the government that he had not driven through the red light prior to Officer Nelson's stop, and that was the substance of his stipulated testimony. *Id.* App. 25a–26a; 29a. However, the stipulation was not considered by the district court because of the court's understandable reluctance to resolve a question of credibility based upon a conflict between a stipulation and live testimony.[3]

Based upon the state of the record at the conclusion of Officer Nelson's testimony, the government argued that it had satisfied its burden of establishing both reasonable suspicion to stop the car, and probable cause. Kithcart countered by arguing that the government had not established reasonable suspicion or probable cause because the description of the car was not consistent with the car Officer Nelson stopped, Officer Nelson believed the car contained only one driver when she stopped it even though she was looking for a car with two suspects, and the description of those suspects was too general to justify stopping the car he was riding in. Kithcart also argued that the timing of the robberies in relation to Officer Nelson's sighting of the car was too uncertain to support the stop. He insisted that Officer Nelson's testimony about the traffic violation could not support a finding of probable cause or reasonable suspicion because it was disputed by the government's own cooperating witness (Green) who denied committing that traffic violation even though he had confessed to serious crimes.

The district court ruled that the government had met its burden of establishing probable cause to seize the gun from Kithcart. The judge relied upon "the direction, the timing, the location of the vehicle, plus the fact that it [was] a black sports car." App. at 60a. The court recognized that there was a discrepancy between the radio description of the suspects as two Black males and Officer Nelson's initial belief that there was only one Black male inside the car when she stopped it. However, the district court found that "probable cause [was] heightened by the fact that [Nelson] had not seen a lot of cars driven by black males in[the] area as she was looking." *Id.* The court minimized the purported discrepancy in the number of people in the car by speculating that the car could have stopped and someone could have gotten out. *Id.* Since the district court found that the police officers had probable cause, it did not address the issue of whether the alleged traffic violation provided an independent basis for stopping the car and searching Kithcart, or whether the search was justified by reasonable suspicion.

## B. Kithcart's First Appeal.

In *Kithcart I* we concluded:

[T]he district court erred in concluding that there was probable cause to arrest and search Kithcart prior to the discovery of the guns. The mere fact that

---

3. It does not appear that the district court ever resolved that conflict.

Kithcart is black and the perpetrators had been described as two black males is plainly insufficient. As we have previously noted, a description of " 'two negro males' and two 'black males' ... without more ... would not have been sufficient to provide probable cause to arrest [the suspect]." *Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n. 2 (3d Cir. 1988). Moreover, the match between the description of the perpetrators' car (a black sports car, "possible Z–28, possible Camaro)" and the vehicle in which Kithcart was spotted (a black Nissan 300ZX) was far from precise. Although the Camaro Z–28 and the Nissan 300ZX could be considered "sports cars," there was no evidence offered at the suppression hearing that the shapes of the two cars were sufficiently similar so as to warrant an inference that a 300ZX could be mistaken for a Z–28.

Nor is probable cause established by either the location or time of the stop. There was no evidence presented as to where in Bristol Township the final robbery occurred; nor was there evidence presented that the Bristol robbery occurred shortly before Officer Nelson stopped the car carrying Kithcart. Although the radio transmission regarding the Bristol robbery came approximately 10 minutes before the vehicle was stopped, Officer Nelson testified that she did not recall that the radio transmission revealed when the Bristol robbery occurred, other than that it occurred that same evening.... In sum, we think that it is clear that the facts and circumstances within Officer Nelson's knowledge at the time she stopped the Nissan were insufficient to allow a prudent person to believe that the car and its occupants had committed or were committing an offense. In other words, armed with information that two black males driving a black sports car were believed to have committed three robberies in the area some relatively short time earlier, Officer Nelson could not justifiably arrest any African American man who happened to drive by in any type of black sports car.

134 F.3d at 531–532.

However, since the district court had focused only upon probable cause, we remanded for the district court to consider "whether the officers had reasonable suspicion for an investigative stop and weapons search of Kithcart's person." *Id.* at 532. We directed the district court to:

> consider both of the government's asserted grounds for the stop: (1) the alleged traffic infraction and (2) the information regarding the robbery suspects discussed [in the above excerpt]. The district court should also consider whether the events leading to the discovery of the weapon in Kithcart's pouch can be justified as a *Terry* "pat-down."

*Id.*

## C. The Second Suppression Hearing.

After remand, Kithcart filed a motion *in limine* by which he sought to preclude the government from presenting any additional testimony. App. at 232a–236a. The government responded by arguing that nothing in Kithcart I precluded additional testimony on remand. *Id.* at 251a. The government insisted that our remand for consideration of reasonable suspicion for the stop permitted it to open the record to additional evidence relevant to Kithcart's motion to suppress. However, the government offered absolutely no explanation for its initial failure to present the additional witnesses at the original suppression hearing, nor did the district court demand an explanation.

The district court denied Kithcart's motion *in limine* and allowed the government to reopen its case and put on additional testimony. Although the court did not articulate its reasoning for doing so, it apparently concluded that our direction to "consider whether the events leading to the discovery of the weapon in Kithcart's pouch can be justified as a *Terry* 'pat-down' " permitted the government to re-

litigate the motion to suppress. *See* App. at 93a ("[O]n the basis of this paragraph and after studying the briefs for both sides, I am going to deny ... the motion *in limine*.").

At the hearing that followed, the defense called Carl Green who testified that he did not run the traffic light. The government called additional police officers (including the officer who had actually seized the gun from Kithcart), introduced photographs to show the similarity between the car Kithcart was riding in, and the Z–28/Camaro mentioned in the radio transmissions, and recalled Officer Nelson for additional testimony that had not been elicited during the first suppression hearing.

Not surprisingly, the government's new testimony nicely filled the lacunae of the first hearing. The testimony that was offered neatly spackled over each of the cracks in the foundation of proof that we pointed out in *Kithcart I*. *See* 134 F.3d at 531–532; and 532–36 (McKee, J., concurring in part and dissenting in part).

The district court summarized the testimony at the second hearing, and stated its findings of fact as follows:

> Officer Nelson testified that the intersection where she pulled up behind the black Nissan sports car was between Route 13 and Bensalem Boulevard.[4] As the two cars were waiting at the traffic signal, Officer Nelson observed that the driver of the Nissan was looking repeatedly at his side-view and rear-view mirrors. The Nissan then proceeded through the red light.
>
> Officer Nelson and Thomas Taylor, a Bensalem Police Sergeant, described the intersection of Route 13 and Bensalem Boulevard. Route 13 runs north and south, and Bensalem Boulevard, which also runs north and south, dead ends from an angle on the west side of Route 13. When the light governing Bensalem Boulevard traffic turns red, northbound

> traffic on Route 13 is presented with a green signal and a green arrow allowing a left turn onto Bensalem Boulevard. This leaves the southbound Route 13 traffic with a delayed green signal. The southbound Route 13 traffic can see the Bensalem Boulevard signal, but an approximate 15 second delay exists between the time when that signal turns red and the time when the Route 13 South signal turns green.
>
> Carl Green, the driver of the Nissan, also testified at the hearing. Green had pled guilty to a firearms offense and cooperated in the government's prosecution of [Kithcart]. Throughout his cooperation, Green consistently contended that he did not run a red light during the incident in question. He reiterated this contention at the hearing. Green also admitted, however, that when he was stopped at the red light, he consistently looked in his mirrors to keep track of Officer Nelson's actions. Green was very nervous, and his attention was focused on "both" the traffic signal and Officer Nelson. Green testified that because he knew a police officer was directly behind him, he exercised special caution against committing a traffic violation.
>
> Officer Nelson testified that the third radio transmission, which she received approximately ten minutes before she spotted the Nissan, indicated that the third robbery took place approximately ten minutes before the transmission. She also testified that immediately after she pulled the Nissan over, she radioed in her location. It was at this point that she saw not only the driver put his hands over his head, but also a second pair of arms extending over a passenger's head. Officer Nelson then realized that there were two black males in the Nissan. She immediately got back in her car, radioed and waited for backup.

---

4. At the second hearing, "[t]he parties agreed that Officer Nelson would not be asked any questions that she was asked at the prior hearing and that her prior testimony would be adopted for those purposes." 1998 WL 962095 at *2 n. 1.

*U.S. v. Kithcart*, 1998 WL 962095, *2–*3 (E.D.P.A.1998).

Based on these facts, the district court concluded that "the search and the initial stop were justified and reasonable under the *Terry* exception to the warrant requirement of the Fourth Amendment." *Id.* at *4.

Accordingly, the district court again denied Kithcart's motion to suppress, and this appeal followed.

## D. Controlling Fourth Amendment Principles.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that a police officer may conduct a reasonable search for weapons for his or her own protection without violating the Fourth Amendment "where he[/she] has reason to believe that he[/she] is dealing with an armed and dangerous individual." *Id.* at 27, 88 S.Ct. 1868. However, a pat-down for weapons can occur only where the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. The test is "whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his[/her] safety or that of others was in danger." *Id.* at 27, 88 S.Ct. 1868.

■ There is testimony here that Kithcart was searched after the car he was riding in ran a red light. "A traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir.1997)(citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). In order to minimize the dangers police officers routinely face, the reasoning of *Terry* has been extended to traffic stops. *Id.* at 13 (citations omitted). In *Moorefield* we held that, under *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), police can conduct a limited weapons "pat-down" of a passenger of a lawfully stopped car so long as the constitutional requirements of *Terry* are met. *Moorefield*, at 13–14. In *Moorefield*, the police officer "pointed to 'specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warranted the pat-down." *Id.* at 14. We also stressed that "an officer need not be absolutely certain that the individual is armed" so long as the officer's concern was objectively reasonable. *Id.* Thus, a police officer can, as a matter of course, order the driver, *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and the passengers, *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), out of a lawfully stopped car.

The same *Terry/Moorefield* analysis would apply here even if the district court concluded that Green did not run a red light, and that Officer Nelson stopped his car based solely upon the radio transmissions she had heard, and her observations of the car and its occupants. However, we need not determine whether the district court erred in its analysis under *Terry* and *Moorefield* because we conclude that, under the circumstances here, the district court erred in allowing the government to reopen the suppression hearing and relitigate the suppression motion.

## E. Reopening The Suppression Motion.

■ In *United States v. Vastola*, 915 F.2d 865, 876 (3d Cir.1990), we relied upon *United States v. Blankenship*, 775 F.2d 735 (6th Cir.1985), in holding that the question of whether the government may augment the record at a suppression hearing after a remand is analogous to the question of whether the government may reopen its case after resting. Such decisions are traditionally within the discretion of the district court. *Id.* Nonetheless, "courts should be extremely reluctant to grant reopenings." *Blankenship*, 775 F.2d

at 740 (6th Cir.1985) (citation omitted). When faced with a motion to reopen, the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted. *Id.*; see also 28 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 6164 (1993). However, "the trial judge must consider a number of factors." *Blankenship,* 775 F.2d at 741 (emphasis added). Furthermore, "[t]he party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially]." *Id.* In order to properly exercise its discretion the district court must evaluate that explanation and determine if it is both reasonable, and adequate to explain why the government initially failed to introduce evidence that may have been essential to meeting its burden of proof. Here, no explanation was even offered by the government.

At the first suppression hearing, Kithcart and the government argued and briefed issues going to probable cause as well as reasonable suspicion. Thus, from the beginning the government was fully aware of what it had to establish to successfully oppose Kithcart's suppression motion. Presumably, the government believed that the weapon seized from Kithcart during a "pat-down" would be admissible once the legality of the stop was established. *See* 134 F.3d at 535 (McKee, J., concurring in part and dissenting in part).[5] However, the government did not present any evidence of the circumstances of a pat-down nor any testimony to support a conclusion that a *Terry* "pat-down" was justified. *Id.* ("This record is devoid of evidence to support a conclusion that any search of Kithcart's person after the stop was reasonable."). The government did not even initially offer the testimony of Officer Williams—the officer who performed the pat-down search of Kithcart.

As noted above, despite the total absence of any explanation for why such evidence was not produced during the first suppression hearing, the district court denied the defense motion *in limine* and allowed the government to reopen its case and present additional evidence that satisfied the constitutional requirements for a *Terry* "pat-down." There is nothing to suggest that evidence was either newly discovered or unavailable during the first hearing.

The government argues, that our decision in *Kithcart I* permitted the government to reopen its case on the suppression motion. Government's Br. at 5. The government and district court believed that *Kithcart I* "set no limit on the nature of the evidence that the government could present" after remand. *Id.* This conclusion is erroneously based upon our direction to "consider both of the government's asserted grounds for the stop," as well as our direction to consider "whether the events leading to the discovery of the weapon in Kithcart's pouch can be justified as a *Terry* 'pat-down.'" *Id.*

In fairness to both the government and the district court, we recognize that our opinion in *Kithcart I* did not expressly address whether the litigants could introduce additional evidence after remand. Nevertheless, our requirement that the district court "*consider*" certain issues on remand is not a justification to allow a party to reopen its case and relitigate those issues. Moreover, our decision in *United States v. Vastola, supra,* is clearly controlling precedent. There, we prescribed the limitations on the district court's discretion to allow additional testimony after remand, and the district court and the litigants should have been guided by the analysis and holding in that case. In addition, the concurring and dissenting opinion in *Kithcart I* informed the government of the need to explain why it had not

5. "The reasonable inferences that arise from the circumstances of a traffic stop are such that it does not require a 'leap of faith' to

conclude that the instant seizure was justified if there was a traffic violation."

offered any additional evidence at the initial suppression hearing.

I would leave it to the trial court's discretion to decide whether the prosecutor should be allowed to produce the testimony that I think is needed to bridge the interstices in this transcript. That court will be in the best position to determine whether or not the government should be allowed a second ... bite of the Terry apple by producing testimony beyond that which is necessary to rule upon the issue of the alleged traffic violation. If there was no traffic violation, Officer Nelson was not justified in stopping the car in which Kithcart was riding. If the suppression court concludes that there was a traffic violation, *then it should determine the propriety of allowing testimony regarding the circumstances of the seizure after considering any explanation as to why that testimony was not produced initially.*

134 F.3d at 536 (McKee, J., concurring in part and dissenting in part)(emphasis added). The government apparently read this as suggesting that the concurring/dissenting opinion interpreted the majority as allowing additional evidence on remand. The government argues, "[i]n his dissent, Circuit Judge McKee acknowledged that the majority opinion would provide 'the government with an opportunity to establish Office Nelson's stop was appropriate ...' ". Government Br. at 5. However, the fact that the majority opinion provided an opening for the government "to establish Officer Nelson's stop was appropriate," does not mean that the government could do so in a manner that was inconsistent with our holding in *Vastola*.[6] Yet, that is exactly what the government did, and precisely what the district court's denial of the defense motion *in limine* allowed.

## II. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in admitting

additional evidence upon remand without the explanation that is required under *Vastola*. Accordingly, we will reverse and remand for further proceedings during which the district court is to perform the analysis of the issues that we set forth in *Kithcart I*. Inasmuch as the government still has not offered any explanation for its failure to introduce additional evidence at the original suppression hearing, we further hold that the court is to base its resolution of those issues solely upon the evidence that was presented or offered at the original suppression hearing. This means that the record is to be limited to the testimony Officer Nelson gave at the first suppression hearing and Carl Green's testimony at the second hearing. We allow the court to consider Green's testimony only because his testimony was offered during the first hearing. Although his testimony was initially offered in the form of a stipulation, the court was made aware that he was available to testify if the court wanted to hear from him. He did actually testify on remand and nothing in *Vastola* prevents the district court from now considering that testimony, and giving it whatever weight the court thinks it is entitled to.

---

**6.** Unlike *Vastola,* here there is no way that the government could have misapprehended or

misunderstood the nature of the proof it had to adduce at the outset.