**UNITED STATES of America**

v.

**Jesse KITHCART.**

**CRIM. No. 96–90.**

United States District Court, E.D. Pennsylvania.

July 26, 2001.

Jesse Kithcart, Fairton, NJ, pro se.

Timothy S. Susanin, U.S. Attorney's Office, Philadelphia, PA, Howard Perzan, U.S. Attorney's Office, Philadelphia, PA, for U.S.

### MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

This case is before the Court on remand from the United States Court of Appeals for the Third Circuit. Defendant Jesse Kithcart ("Defendant") pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant changed his plea to guilty after the district court denied his Motion to Suppress the firearm in question. The Third Circuit reversed and remanded to this Court, "for further proceedings to consider whether the officers had reasonable suspicion for an investigative stop and weapons search of Kithcart's person." *United States v. Kithcart,* 134 F.3d 529, 532 (3d Cir.1998) (*"Kithcart I"*).[1]

On remand, this Court conducted a hearing and found that the officers had reasonable suspicion for the investigative stop and weapons search and, therefore, denied Defendant's Motion to Suppress the firearm. The Third Circuit, holding that the district court erred solely because it permitted the prosecution to open the record and present additional testimony, reversed and remanded again to this Court for further proceedings "to perform the analysis of the issues that [the Court] set forth in *Kithcart I." United States v. Kithcart,* 218 F.3d 213, 221 (3d Cir.2000) (*"Kithcart II"*).[2] Because it finds that the

---

1. This case was originally before the Honorable Marjorie O. Rendell.

2. In *Kithcart II,* the Third Circuit stated: "We hold that the district court erred in allowing the prosecution to open the record and present additional testimony. We will therefore

police officers had a reasonable basis to stop the car and perform a "pat-down" weapons search of Defendant's person, the Court will deny Defendant's Motion to Suppress.

## I.  BACKGROUND

The following facts are set forth in *Kithcart I*, 134 F.3d at 529–30: On July 25, 1995, Bensalem Township Police Officer Teresa Nelson was on evening duty in her patrol car.  Over the period of one hour, she received three radio transmissions reporting armed robberies.  The first two robberies were of Bensalem motels, and the last occurred in neighboring Bristol Township.  The transmissions described the perpetrators as "two black males in a black sports car," and communicated that one of them might have been wearing white clothes, and that the car was a *"possible* Z28, *possible* Camaro." (emphasis supplied).

At 10:53 p.m., approximately ten minutes after receiving the final radio transmission, Officer Nelson observed a black Nissan 300ZX, which she described as a sports car, proceeding south on Route 13, approximately one mile from the border with Bristol Township.  Officer Nelson testified that she first observed one person in the car, the driver, a black male, and that she pulled the car to the side of the road only after it had run a red light.[3] She realized that there were two males in the car when both of them raised their arms over their heads.  As soon as she saw two black males in the black sports car, Officer Nelson got back into her car, radioed, and waited for backup.  Officers Christine Kellaher and Bill Williams ar-

rived on the scene.  Officer Williams conducted a "pat-down" and discovered a revolver in Defendant's white nylon waist pouch.  Officer Kellaher located another gun under the driver's seat.

Defendant moved to suppress the seized evidence, arguing that the police lacked the requisite modicum of suspicion to justify the investigatory "stop and frisk" that produced the concealed firearms.  *See Terry v. Ohio,* 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  The government offered two justifications for the search: (1) the red light violation and (2) the information provided by the radio transmissions, combined with the circumstances presented to Officer Nelson when she observed the black Nissan sports car.  Concluding that it was unnecessary to decide whether a traffic violation had occurred, Judge Rendell found that probable cause to arrest had existed based on the "direction, the timing, the location of the vehicle, plus the fact that it is a black sports car."  (7/1/96 Tr. at 48.)  Judge Rendell discounted the fact that Officer Nelson had first observed only one black male in the car, as the pair could have "split up" or the other could have been concealing himself.  (7/1/96 Tr. at 49.)  Thus, Judge Rendell concluded that the search was justified as incident to a lawful arrest, obviating the need to determine whether a traffic violation had occurred.  After this ruling, Defendant changed his plea to guilty, preserving his right to appeal the denial of the Motion to Suppress.

A panel of the Third Circuit reversed the finding that Officer Nelson had probable cause to arrest and search Defendant.  The Court stated that Kithcart's race did not provide probable cause, even though

once again reverse and remand." 218 F.3d at 214.

3.  At the hearing on the Motion to Suppress before Judge Rendell, Officer Nelson, herself

a black woman, testified that this was the first she observed either a black sports car or a black male driver since the first radio transmission.

the suspects had been described as "black males." *Kithcart I*, 134 F.3d at 531. The Court further noted that the description of the suspect car ("black sports car, possible Z28, possible Camaro") did not *precisely* fit the Nissan 300ZX sports car that Officer Nelson stopped and that no evidence had been offered to explain how a 300ZX could be mistaken for a Z28. *Id.* A finding of no probable cause did not mandate an automatic suppression of the evidence, however, as a limited investigatory stop and search may have been reasonable under the Fourth Amendment upon "reasonable suspicion," a quantum of suspicion less than probable cause. *See Terry*, 392 U.S. at 30, 88 S.Ct. 1868.

Thus, with one panel member concurring and dissenting, the Third Circuit reversed the district court's denial of the suppression motion and remanded "for further proceedings to consider whether the officers had reasonable suspicion for an investigative stop and weapons search of Kithcart's person." *Kithcart I*, 134 F.3d at 532.[4]

## II. THE SECOND SUPPRESSION HEARING

After remand, Defendant filed a motion in limine seeking to preclude the government from presenting any additional testimony.[5] After reviewing *Kithcart I*, 134 F.3d at 532, the Court denied Defendant's motion in limine and allowed the government to reopen its case and put on additional testimony during a hearing conducted on July 23, 1998.[6] During this hearing, the Court heard testimony from Officer Nelson, Bensalem Police Officer William G. Williams, Bensalem Police Sergeant Thomas Taylor, investigator Marilyn Peterson of the Federal Defenders Association, and co-defendant Carl Green, who was the driver of the car on the night of Defendant's arrest.[7] The Court also admitted several photographic exhibits that showed the similarity between the Nissan 300ZX that Defendant was riding in when stopped and the Z28/Camaro mentioned as a *possibility* in the radio transmissions.

Upon consideration of all of the evidence presented during the July 23, 1998 hearing, the Court concluded that Officer Teresa Nelson was credible and that Green had run a red light. Thus, the stop of the vehicle and subsequent "pat-down" of Defendant's person were reasonable under the Fourth Amendment. Defendant again appealed.

---

4. Circuit Judge McKee, the concurring and dissenting judge, agreed with the majority's conclusion that the prosecution had not established that Officer Nelson had probable cause to arrest Defendant, but disagreed with the decision to remand the case for further proceedings to determine whether the officers had reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to stop and detain the occupants of the car.

5. On February 20, 1998, this case was reassigned from the calendar of the Honorable Marjorie O. Rendell to the calendar of the undersigned Judge, who had not had the opportunity to observe Officer Nelson as she testified during the original suppression hearing.

6. In permitting new testimony to be introduced, the Court relied on the Third Circuit's remand in *Kithcart I* "for further proceedings to consider whether the officers had reasonable suspicion for an investigative stop and weapons search of Kithcart's person." *See Kithcart I*, 134 F.3d at 532; *see also Kithcart II*, 218 F.3d at 220 ("In fairness to both the government and the district court, we recognize that our opinion in *Kithcart I* did not expressly address whether the litigants could introduce additional evidence after remand.")

7. Carl Green, who pled guilty to a firearms offense and cooperated in the government's prosecution of Defendant, contended that he did not run a red light during the incident in question.

## III. DEFENDANT'S SECOND APPEAL

On appeal, a different panel of the Third Circuit (except for the original dissenter) held that the district court erred in allowing the prosecution to open the record and present additional testimony. *Kithcart II*, 218 F.3d at 213. Once again, therefore, the Third Circuit reversed.[8] This time, the Court remanded the case for "further proceedings during which the district court is to perform the analysis of the issues that [are] set forth in *Kithcart I*," and directed the district court:

> to base its resolution of those issues solely upon the evidence that was presented or offered at the original suppression hearing. This means that the record is to be limited to the testimony Officer Nelson gave at the first suppression hearing and Carl Green's testimony at the second hearing. We allow the court to consider Green's testimony only because his testimony was offered during the first hearing.

*Kithcart II*, 218 F.3d at 221. Later, the Court amended its Order to add the following language:

> Inasmuch as this case has been reassigned to a district judge who has not had the opportunity of observing Officer Nelson as she testifies, and inasmuch as conflicts in the testimony must be resolved to properly rule upon the motion to suppress, the Government is hereby permitted to recall Officer Nelson at the hearing before the district court on remand. However, she may only be asked those questions on direct examination that she was initially asked at the first suppression hearing before Judge Rendell. The defense counsel will then have an opportunity to cross-examine according to the Rules of Evidence, and the Government may then conduct a recross-examination based upon, and limited to, Officer Nelson's testimony on cross-examination. Any additional questioning will also be appropriately limited by the scope afforded under the Federal Rules of Evidence.

*United States v. Kithcart*, No. 99–1082 (3d Cir. Aug.31, 2000).

## IV. RECALL OF OFFICER NELSON

At a hearing held on December 21, 2000, the government asked Officer Nelson the same questions asked at the original suppression hearing, and instructed her that "the scope of her answer [could] not exceed the answer given at the first hearing." (12/21/00 Tr. at 6.) Once again, Officer Nelson testified that she had observed a black Nissan 300ZX sports car driving southbound on Route 13 at approximately 10:53 p.m. on July 25, 1995, shortly after she received the radio transmissions reporting armed robberies in the area by two black males in a black sports car. (12/21/00 Tr. at 8–11, 14.) According to Officer Nelson, she approached the vehicle at a red light and first noticed that there was one black male, the driver, who was "basically looking in his rear view mirror, his side view mirror, just turning his head from left to right." (12/21/00 Tr. at 14.) The vehicle, she said, "then drove through the intersection against the red light," and she pulled it over. (12/21/00 Tr. at 14–15.) When she began to get out of her vehicle, Officer Nelson "saw a second pair of arms come up and at that moment [she] knew that there was a passenger in the vehicle because that passenger also put [his] hands on top of [his] head." (12/21/00 Tr. at 15.) She then got back into her car and

---

8. The panel consisted of Circuit Judges Mansmann and McKee and Senior Circuit Judge Stapleton. Judge McKee, who had dissented in part in *Kithcart I*, wrote the panel's opinion.

radioed for backup. (12/21/00 Tr. at 15.) Officer Nelson further testified, as she had at the first hearing, that two guns were recovered during the traffic stop, one on Defendant's person and the other under the driver's seat. (12/21/00 Tr. at 21.) The gun that was found on Defendant, according to Officer Nelson, was recovered from his white nylon waist pouch by Officer Williams. (12/21/00 Tr. at 21–22.)

## V. DISCUSSION

The issue now before the Court is whether Officer Nelson had a reasonable suspicion sufficient to warrant an investigative stop. In accordance with the Third Circuit's opinions in *Kithcart I* and *Kithcart II*, the Court will consider the government's asserted grounds for the stop: (1) the alleged traffic infraction and (2) the information received by Officer Nelson regarding the armed robbery suspects. It then will consider whether the events leading to the discovery of the weapon in Kithcart's pouch can be justified as a *Terry* "pat-down."

Having considered the evidence that was "presented or offered at the original suppression hearing," Carl Green's testimony at the second suppression hearing, and Officer Nelson's testimony at the hearing of December 21, 2000, the Court concludes that the traffic violation justified the stop and that the search of Defendant's person was proper under *Terry*.

The Third Circuit has ruled that the radio transmissions and the observation of a black male in a black sports car headed in a southern direction alone did not provide probable cause to arrest Defendant, and thus the search must be justified, if at all, on another basis. In *Terry*, the Supreme Court created a limited exception to the warrant requirement of the Fourth Amendment by allowing an investigatory stop based upon reasonable suspicion. *See* 392 U.S. at 21, 88 S.Ct. 1868. "It is well established that an investigatory stop short of an arrest is valid if based upon a reasonable suspicion that criminal activity is afoot." *United States v. Rickus,* 737 F.2d 360, 365 (3d Cir.1984). Reasonable suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. In deciding whether a stop was justified, the court must view the circumstances surrounding the stop in their totality, giving due weight to the experience of the officers. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The stop and search itself must be "reasonably related in scope to the justification for its initiation." *Terry,* 392 U.S. at 29, 88 S.Ct. 1868.

■ The Court must first determine whether Green ran the red light at the intersection of Route 13 and Bensalem Boulevard, because a traffic violation alone would justify a stop. *United States v. Moorefield,* 111 F.3d 10, 12 (3d Cir.1997). Officer Nelson testified that she observed Green run the red light. Green contends that he waited until the signal was green before proceeding. He also conceded, however, that he was nervous and split his attention between the traffic signal and the police car behind him. This issue essentially boils down to a credibility determination. Based on the testimony and the surrounding circumstances, the Court finds that Green did indeed commit a traffic violation on the night in question. Thus, the initial traffic stop, without any consideration of further suspicion of wrongdoing, was reasonable under the Fourth Amend-

ment.[9]

This determination does not end the inquiry, however, as the Court must also decide if the subsequent "pat-down" of Kithcart's person was reasonable under the Fourth Amendment. *Terry* commands a two-part analysis: (1) whether the action was justified at its origin, and (2) whether the action was reasonably related in scope to the justifying circumstances. *See Terry*, 392 U.S. at 20, 88 S.Ct. 1868. *Terry* allows a reasonable search for weapons when the officer can point to "specific and articulable facts" that indicate that he or she is facing an armed and dangerous individual. *Id.* at 21, 88 S.Ct. 1868. The question is whether a reasonably prudent person, in circumstances similar to those faced by the police officer, would believe his or her safety, or that of others, was in danger. *Id.* at 27, 88 S.Ct. 1868. The officer need not be "assured," however, that the suspect is armed. *Id.*

Once the justified traffic stop was made, the Fourth Amendment allowed Officer Nelson and her colleagues to order Green and Defendant out of the Nissan. *See Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). With regard to the reasonableness of the "pat-down," the Supreme Court and the Third Circuit have recognized that routine traffic stops themselves are dangerous encounters for police officers, especially when the automobile contains an additional passenger. *Id.* at 413, 117 S.Ct. 882; *Michigan v. Long*, 463 U.S. 1032, 1047, 103

S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *United States v. Robinson*, 414 U.S. 218, 234 n. 5, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir.1997).

In the present case, Officer Nelson and her colleagues were faced not only with a lawful traffic stop, but with a number of circumstances reasonably indicating that the occupants of the car were armed and dangerous. After the initial stop, Officer Nelson learned that there were *two* black males in the Nissan. She thus found herself behind a "small black sports car," occupied by "two black males," approximately twenty minutes after the last of *three armed robberies* perpetrated in the area by two black males traveling in a black sports car. Moreover, Defendant had apparently been hiding from view and had shown himself only upon Officer Nelson's traffic stop. Immediately after the black sports car was pulled over, both occupants, without being ordered to do so, put their hands over their heads. The fit of the description and the behavior of the occupants therefore warranted an investigatory "pat-down" for weapons.[10] To hold otherwise would impose an unconscionable risk on police officers performing increasingly perilous duties.

Officer Williams conducted the "pat-down" and recovered the gun from Defendant's white nylon waist pouch.[11] Thus, the Court finds that both the initial stop

---

9. Because the Court rules that the traffic violation alone justified the stop, it need not address the issue of whether the information concerning the armed robbery suspects was also sufficient to justify the stop.

10. When "specific and articulable facts" from the occupant's behavior so warrant, a "pat-down" is justified. *See Moorefield*, 111 F.3d at 14.

11. Defendant admitted that a "pat-down" had occurred. *See Kithcart I*, 134 F.3d at 530 ("Kithcart argued that Officer Williams had discovered his gun during a 'pat down' or 'frisk' but that the standard for conducting a 'frisk' under *Terry* had not been met") (citing App. 97a.).

and the "pat-down" were justified and reasonable under the *Terry* exception to the warrant requirement of the Fourth Amendment.

## VI.  CONCLUSION

The search and seizure that produced the evidence Defendant seeks to suppress did not violate his Fourth Amendment rights.  Accordingly, **IT IS ORDERED** that Defendant's Motion to Suppress is **DENIED.**