OPINION OF THE COURT

STAPLETON, Circuit Judge:
Appellant Nolan Hugh was convicted by a jury of conspiracy to interfere with interstate commerce by robbery, interference with interstate commerce by robbery, and using a gun during a crime of violence. He was sentenced to 180 months of imprisonment, and this appeal followed. We will affirm.
The teller at the check cashing store that was robbed by two men testified for the government. On direct, she gave a detailed account of the robbery itself and of her subsequent identification of Hugh in a police photo spread as the “second robber” — the robber who had stopped by the store two hours before he reappeared during the robbery. She said, among other things, that Hugh had asked for change for a $5 bill when he first came to the store. On cross-examination, defense counsel showed her a two-page police “Investigation Interview” she had given to the police on the day of the robbery and asked if she did not there say she could not remember why Hugh had first come to the store. The witness acknowledged the conflict. The two-page interview, which in response to questions from an investigating officer provided an account of the entire robbery episode, had been marked Defendant’s Exhibit D-l-A for identification (hereafter “D-l-A”).[1] Its contents had not been referred to earlier in the trial. Although the investigating officer testified in response to questions from defense counsel that he prepared a report of the interview, the contents of that report were not subsequently referred to in the testimony. D-l-A was never offered into evidence.
During his closing argument, defense counsel, in the course of arguing that the photo spread had been unduly suggestive, informed the jury that the teller in her interview on the day of the robbery had described the second robber as having a “Muslim type beard.”
Following the Court’s charge to the jury, defense counsel asked that D-l-A and another document be sent out to the jury room with the jury. The government pointed out that they had not been moved into evidence and that, if they had been, the government would have objected to their admission as hearsay. The Court declined to send the exhibits out with the jury, stating: “[T]hey were not moved into evidence. So they will not go out.” App. at 528.
After the jury retired and the Court returned from a recess, it further ex *798 plained to defense counsel why D-l-A was hearsay:
The other document is D-l-A, which is called an Investigation Interview Record dated May 24, '03, which is a series of questions put to Alyia Hason, and her answers, which were typed up by the detective and signed by Ms. Hason. That, of course, was a statement made by a witness, other than while testifying here at the trial or hearing. This does not come within the exception set forth in rule 801[ (d) ], which defines statements which are not hearsay. And while under certain circumstances prior statements of witnesses may be admitted into the record, and are not deemed to be hearsay, this document does not come within the definitions set forth in 801[ (d)(1)].[2]
First of all, it doesn’t come within rule 801[ (d)(1)(A) ], since it is not given under oath. It does not come within the definition of 801[ (d)(1)(B) ] because it’s not being offered as a statement consistent with the declarant’s testimony, and it is not offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.
And again, neither of these documents comes within any exception of the hearsay rule. So therefore, again, while this document was used for impeachment purposes during the examination of Ms. Hason, it’s not substantive evidence and will not be admitted.
App. at 530-31.
After reaffirming its ruling that the statement was not admissible as “substantive evidence,” the Court added that “even if it’s somehow admissible at this point, I think by sending it out to the jury would give undue weight to that statement.” App. at 532.
At some point during the Court’s discussion of this issue with counsel, the jury sent a note to the Court requesting that it be provided with a copy of D-l-A and a police investigation report of the robbery. The Court responded:
Members of the jury, under our rules of evidence, I will not be able to send those statements out with you, and you’re just going to have to remember the testimony that was given during the trial, and of course the demonstrative exhibits that you have. Thank you.
App. at 532-33.
Before us, Hugh insists that the District Court abused its discretion by not reopening the evidence, admitting D-l-A, and sending it out to the jury. We find no abuse.
First, as the foregoing account indicates, the defense failed to offer D-l-A into evidence and did not provide an excuse for not doing so. As a result, with one minor exception regarding the teller’s memory of the pretext for the second robber’s initial *799 appearance, the significance of the contents of that two page document was something that the government had no occasion to address through testimony, exhibits, or comments of counsel in closing. In a letter to the court, the defense calls our attention to several cases in which courts of appeals have affirmed the decision of a district court to reopen the record in a case after both parties had rested. See United States v. Boone, 437 F.3d 829, 837 (8th Cir.2006); Duong v. McGrath, 128 Fed.Appx. 32, 34 (9th Cir.2005) (non-preeedential); United States v. Ramirez-Gonzales, 116 Fed.Appx. 369, 372 (3d Cir.2004) (non-precedential); United States v. Mojica-Baez, 229 F.3d 292, 300 (1st Cir.2000); United States v. Wilcox, 450 F.2d 1131, 1144 (5th Cir.1971); United States v. Schartner, 426 F.2d 470, 475 (3d Cir.1970); United States v. Duran, 411 F.2d 275, 277 (5th Cir.1969) In none of those cases, however, did the court of appeals grant what Hugh asks from this court — a decision reversing the district court’s decision not to reopen a case. There is good reason for this. Our precedents and those of other courts of appeals — including those that Hugh cites to us — have consistently held that a district court enjoys broad discretion regarding whether to reopen the record. Boone, 437 F.3d at 836; United States v. Coward, 296 F.3d 176, 180 (3d Cir.2002) (drawing an analogy between reopening a trial record after the parties have rested and reopening the record of a suppression hearing on remand); United States v. Blankenship, 775 F.2d 735, 741 (6th Cir.1985); Wilcox, 450 F.2d at 1143; Duran, 411 F.2d at 277. We have also cautioned “that courts should be extremely reluctant to grant reopenings.” Coward, 296 F.3d at 180 (quoting United States v. Kithcart, 218 F.3d 213, 219 (3d Cir.2000)); Wilcox, 450 F.2d at 1143-44. Under the circumstances of this case, where the defense offered no excuse for failing to move the exhibit into evidence and the prosecution had no occasion to address it,[3] we cannot say that the district court abused its discretion by not admitting it at the late stage at which it was offered.
Second, we perceive no error in the District Court’s ruling that D-l-A was inadmissible hearsay. When the defense finally focused the Court’s attention on its desire to get D-l-A to the jury, at no point did it offer less than the entire exhibit and at no point did it refer the Court to the two rules of evidence it now relies upon to support D-l-A’s admissibility. This is important because it is clear from the record that the Court understood the defense to be seeking to get the entire statement before the jury. From this perspective, it is clear both that the granting of this request would have involved the admission of hearsay and that neither of the now cited rules were relevant.
D-l-A consists of a detective’s two-page account of what he understood the teller to be saying as he questioned her about her experience on the day of the robbery. It is clearly hearsay as defined in Fed. R.Evid. 801(c) and clearly does not come within any of the three exceptions carved out by Rules 801(d)(1)(A), (B) or (C). As the District Court observed, D-l-A did not come within the scope of (A) because it was not given under oath or (B) because it was not offered as a prior consistent statement. While Hugh now insists that D-lA was admissible under (C), only one answer to one question in this two-page doc *800 ument can fairly be characterized as a statement “of identification of a person made after perceiving the person.”[4] See United States v. Brink, 39 F.3d 419, 424-26 (3d Cir.1994). Given the failure to call this single answer or Rule 801(d)(1)(C) to the Court’s attention, we cannot fault the Court for viewing D-l-A as hearsay.
The other rule relied upon before us for the first time is Rule 612 relating to writings “Used to Refresh Memory.”[5] Hugh insists that the teller acknowledged reviewing D-l-A the day before she testified “to prepare for testifying” and, accordingly, that it “could be admitted ... in its entirety under Rule 612(2).” Br. Appellant at 30. It is not at all clear to us that the teller acknowledged using D-l-A to refresh her recollection,[6] but we assume for present purposes that she did.
Because D-l-A was not offered under Rule 612, the District Court never had the opportunity to exercise its discretion regarding the “interests of justice” and, for that reason alone, we would be reluctant to find that it had abused its discretion. Even if the Court’s attention had been called to Rule 612 and it had declined to let D-l-A go to the jury, however, we still would not find abuse. What the defense wished to get before the jury from D-l-A was the description of the second robber given by the teller to the police on the day of the robbery. As Hugh’s brief before us explains, “[Wjhile defense counsel accurately referred to the document during closing argument — that Ms. Hason described robber 2 as having a Muslim beard — counsel’s statement could not be considered as evidence of that fact by the jury.” Br. Appellant at 31. Rule 612 was not an appropriate vehicle, however, to remedy this situation.
*801 Rule 612 provides for the introduction of a -writing used to refresh memory prior to trial at the court’s discretion because the “power of suggestion embodied in a writing can create a false memory,” which the witness may be “unable to distinguish from that based on actual perception.” 28 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6182, at 443-44 (1993). Accordingly, the right conferred by Rule 612 “ ‘to introduce in evidence those portions which relate to the testimony of the witness’ ... simply means the writing may be admitted on the question of the witness’ credibility and is not thereby made admissible for other purposes. If offered for some other purpose, different rules would be applicable, such as those regulating hearsay and the use of copies.” 28 id. § 6183, at 455-56.
Had the District Court been referred to Rule 612 and advised of why it was being offered, the denial of the application would not have been an abuse of discretion. D-1-A was not being offered to show that anything the teller had testified to had been influenced by her refreshing her recollection with the description of the second robber. Rather, it was being offered as “substantive evidence,” in the Court’s words, — i.e., offered for the truth of the detective’s report that the teller described the second robber as having a “Muslim beard.” If the defense wished to argue, as counsel did in closing, that the police had structured the photo spread so that only one individual would fit the description given by the teller, defense counsel had a full opportunity to secure competent evidence of the teller’s description from the teller and from the detective who also testified. D-l-A when offered for this purpose, however, was hearsay.
Having concluded that the District Court did not abuse its discretion in finding D-l-A inadmissible when and as offered to it, we find it unnecessary to address Hugh’s challenge to the District Court’s ruling that if D-l-A were admissible it should nevertheless not be given to the jury because of the potential for it being given undue weight.
The judgment of the District Court will be affirmed.[7]

. The second page of the record of the interview was marked Defendant’s Exhibit D-l-B for identification. However, the entire exhibit for identification will be referred to herein as "D-l-A.”

. Federal Rules of Evidence 801(c) and 801(d)(1) provide as follows:
(c) Hearsay. "Hearsay” is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
(d) Statements which are not hearsay. A statement is not hearsay if—
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; ...

. We have admonished prosecutors for commenting during closing argument on facts not in evidence, including exhibits marked for identification but not entered into evidence. Gov’t of Virgin Islands v. Rosado, 699 F.2d 121, 125-26 (3d Cir.1983); United States v. Newman, 490 F.2d 139, 147 (3d Cir.1974); United States v. LeFevre, 483 F.2d 477, 479-80 (3d Cir.1973).

. The teller’s answer to a request for a description of the "second male” was as follows:
He was short. He was about 5'5 and a darker brown skin. He had a mustache and a Muslim type beard. He was wearing a dark colored windbreaker with a yellow shirt underneath with some black printing on it. He was wearing loose pants. They were dark colored, either khakis or jeans. He was also thin. He was younger, between 30-35.
App. at 541.

. Federal Rule of Evidence 612 provides:
Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh memory for the purpose of testifying, either—
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.
If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

. The record reflects that the prosecutor gave the witness documents to review and that she read “not all of them, but ... a few on Thursday.” App. at 216. The teller's statement that she thought she reviewed "the paper you just had here ... yesterday morning,” App. at 217, may or may not be a reference to D-l-A. Because it was never referred to Rule 612, however, the District Court had no occasion to determine whether the witness did or did not refresh her recollection with D-l-A before trial.

. Appellant’s brief also suggests for the first time that D-l-A should have gone to the jury under the authority of Rule 613(b) pertaining to conditions for the admissibility of prior inconsistent statements. The only referenced inconsistent statement in D-l-A is the teller’s statement that she did not remember the pretext for the second robber's initial visit which is said to conflict with her testimony that she now remembers he was asking for $5.00 in change. Even if the defense had cited this rule and offered only the single sentence of D-l-A, i.e., "I don't remember what he asked for, but he didn’t cash a check,” we would find no abuse in declining to reopen the record for such an inconsequential matter, particularly since the teller acknowledged the conflict.