NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4222
_____

UNITED STATES OF AMERICA

v.

WILLIAM MITCHELL,

                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 09-cr-00096)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2011

Before:  HARDIMAN and BARRY, *Circuit Judges*,
and SLOMSKY[*] *District Judge*.

(Filed: December 08, 2011)

_____

OPINION OF THE COURT
_____

―――――――――――――

     [*]The Honorable Joel H. Slomsky, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

1

HARDIMAN, *Circuit Judge*.

William Mitchell appeals the District Court's judgment of conviction and sentence after he pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

A

The facts found by the District Court following the suppression hearing are not in dispute. Around midnight, Wilmington Police Officers Israel Santiago and Michael Hayman were responding to a report of shots fired near the intersection of Fifth and Clayton Streets when they encountered a vehicle traveling nearby on Dupont Street at approximately five miles per hour with its headlights turned off. While passing the vehicle in the opposite direction, Santiago informed the driver that her lights were off, but the driver disagreed. Santiago then observed Mitchell "crouched" in the back seat of the vehicle. After the cars passed one another, the driver turned on her headlights as Santiago made a u-turn, activated his lights, and initiated a traffic stop. Santiago and Hayman exited the police cruiser and approached the vehicle from opposite sides. Santiago asked the driver several times to turn off the vehicle's engine before the driver complied. He

2

noticed that Mitchell was seated behind the driver with his hands crossed over his midsection. Mitchell did not make eye contact with the officers. Santiago then requested identification from Mitchell and the driver, and they obliged. By that time, Officer Thomas Oliver had arrived at the scene to assist Santiago and Hayman, and Santiago asked Oliver to check if Mitchell had any outstanding warrants or criminal history. Although the search revealed no warrants, it indicated that Mitchell had a criminal record, including weapons offenses.

Santiago ordered the driver and Mitchell from the vehicle, but Mitchell refused. Santiago and Hayman drew their service weapons. They ordered Mitchell to exit the vehicle several additional times, but he did not comply. Oliver then opened the rear passenger door and pulled Mitchell out of the vehicle and onto the ground. Mitchell initially refused to place his hands behind his back, but did so after the officers threatened to tase him. Oliver handcuffed him and patted him down, locating a firearm tucked into Mitchell's pants near his abdomen. As Oliver removed it, Mitchell offered: "It's not real. It's a fake."

B

Mitchell moved to suppress the firearm and his statement on the basis of *Terry v. Ohio*, 392 U.S. 1 (1968), arguing that the officers lacked an articulable suspicion to conduct the pat down. Mitchell also argued that the gun was discovered and his statement was obtained as the result of an illegal interrogation in violation of *Miranda v. Arizona*,

3

384 U.S. 436 (1966). The District Court conducted a suppression hearing and received briefs on the matter before finding that the traffic stop was legal and denying the motion on both grounds. Mitchell then entered a conditional plea of guilty pursuant to a written agreement that reserved his right to appeal the denial of his suppression motion.

II

Because Mitchell does not contest the District Court's factual findings, we exercise plenary review over the denial of the motion to suppress. *See United States v. Warren*, 642 F.3d 182, 183 n.1 (3d Cir. 2011); *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). On appeal, Mitchell challenges only the frisk, and not the initial traffic stop or the ruling on his *Miranda* argument.

A police officer may order a passenger from a lawfully stopped vehicle "as a matter of course." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000); *accord Arizona v. Johnson*, 555 U.S. 323, 331–32 (2009). Accordingly, we find no fault with the order directing Mitchell from the car. Nor can we fault the officers' decision to use force to remove him from the vehicle when he failed to comply with the order, because to "effectuat[e] a valid stop, police officers are allowed to use a reasonable amount of force." *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

In addition, an "officer may pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants

4

might be armed and dangerous." *Id.* at 216 (citing *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)); *see Johnson*, 555 U.S. at 332 ("[O]fficers who conduct 'routine traffic stop[s]' may 'perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.'" (second alteration in original) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117–18 (1998))). "Although reasonable suspicion is less demanding than probable cause, the Fourth Amendment does require that an officer making a stop have some level of objective justification for that stop." *Bonner*, 363 F.3d at 217 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The totality of the circumstances dictates whether reasonable suspicion exists. *Id.*

The evidence at the suppression hearing as found by the District Court easily clears the reasonable suspicion hurdle. Mitchell was seen crouching in the back seat of a vehicle, which was traveling at an unusually low speed in the dark of night with its headlights off. Mitchell kept his hands in such a position that he appeared to be concealing something, and he refused to comply with the officers' orders to leave the vehicle. *See United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997) (finding officers had reasonable suspicion in part because the defendant, a vehicle passenger, refused to obey an officer's order to remain in the vehicle with his hands showing). Once he was removed, Mitchell tried to avoid moving his hands away from the front of his body. Mitchell's "behavior was consistent with the behavior of a person trying to conceal something." *Id.* By this time, the officers were aware of his criminal history involving

5

weapons and throughout the stop the officers knew that shots had recently been fired in the vicinity.

Ignoring these inconvenient facts, Mitchell cites an isolated segment of Santiago's direct examination during the suppression hearing:

Q. What was the defendant's demeanor?

A. Just suspicious. He was not looking. Just quiet. Not even looking straight. Just didn't want to look at me. Avoided eye contact.

Q. Did you find this unusual?

A. Yes.

Q. Why?

A. Because normally, when a police officer approaches someone, they are nervous, they are scared. They want to know what's going on. So they are looking at you all the time.

(J.A. 57.) Mitchell argues that these answers are insufficient to justify reasonable suspicion. He also appears to contend that under the totality-of-the-circumstances test, the officers' subjective justification can negate objective factors that constitute reasonable suspicion. (*See* Mitchell's Br. 12–13; Reply Br. 2–3.)

Mitchell's first argument fails because it is based on the fallacy that the cited testimony reflects the full extent of Mitchell's interaction with the officers. In view of the officers' knowledge of the circumstances surrounding the stop, Mitchell's criminal history, his crouching position, his apparent concealment of an object, and the suspicious behavior of the vehicle in which he was traveling, it was reasonable for the officers to pat

6

down Mitchell to ensure their own safety. With respect to Mitchell's second contention, the officers' subjective justification for the frisk is not pertinent to the reasonableness of the search. "[T]he 'reasonable suspicion' analysis is objective; subjective motive or intent is not relevant for *Terry* purposes." *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006) (citing *Terry*, 392 U.S. at 21–22).

## III

For the foregoing reasons, we will affirm the District Court's judgment.