**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank ESTELL and Silas Smith, Jr., Defendants-Appellants.**

**Nos. 75–1640 and 75–1641.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted June 24, 1976.

Decided Aug. 3, 1976.

Monti L. Belot, Asst. U.S. Atty., Topeka, Kan. (E. Edward Johnson, U.S. Atty., Topeka, Kan., and Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., on the brief), for plaintiff-appellee.

Leonard D. Munker, Federal Public Defender, Wichita, Kan. (Daniel J. High, Asst. Federal Public Defender, Wichita, Kan., on the brief), for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a criminal conviction of the defendant-appellant, who was charged with the unlawful, knowing and intentional distribution of heroin.

The incident occurred on November 20, 1974, at Fort Riley, Kansas. The government was utilizing the services of one James Ray, a Fort Riley, Kansas soldier who was acting as an undercover agent. The evidence showed that Ray had been assigned to Fort Riley following an 18-month tour of duty in Vietnam. While overseas he had become addicted to heroin, a condition which continued after his transfer to Fort Riley, Kansas. This fact was discovered by the military authorities when they tested Ray incident to his being processed upon returning to the United States. He was treated, but this treatment was not successful. According to Ray's testimony his addiction continued up until February 4, 1974, at which time he was arrested by Junction City officers in connection with the investigation of a murder. He was charged, however, with carrying a concealed weapon, a straight razor, and was jailed for several days. During his stay he made friends with a Junction City officer who, in turn, was responsible for his working with the drug enforcement agency as an undercover agent.

On the night in question Ray met with drug agents at a motel in Junction City, at which time he was searched, given $500 and fitted with a transmitter; then he was driven to a barbecue operated by one Frank

Estell. He went inside and contacted Silas Smith, Jr. and advised him that he (Ray) wished to purchase some heroin with $500 he had received as a reenlistment bonus. He told Smith also that the man in the car outside was a fellow serviceman who had received a $500 bonus, which sum he wished to invest in heroin.

Smith said that he was then unable to furnish enough heroin to make the sale so he borrowed a car and drove Ray to the Holiday Trailer Court where he and Ray contacted the defendant Estell. Estell provided the additional heroin needed to consummate the sale. Sixteen balloons were transferred for which Ray gave Smith $425. Ray and Smith then returned to the barbecue restaurant and delivered the borrowed car to its owner. Ray then went to the motel with the agent and underwent another search. The amount of heroin which the chemist found to exist was .13 grams or .0046 ounces.

The points advanced by appellant are:

1. Failure of the government to charge in the indictment the exact amount of heroin processed or distributed. The indictment charged the defendant with distributing 14.1 grams of heroin as opposed to the actual amount of heroin which was .13 grams. The weight of the heroin and the other substances contained with it totalled 6.47 grams. This variance is claimed to be fatal.

2. The refusal of the court to allow the informant Ray to be examined as to other disconnected offenses, including his purchase of marijuana to be resold in order to support his heroin habit.

3. The refusal of the court to permit the defendant to show prior misconduct of Ray obtaining to acts of stealing meat from Fort Riley and writing bad checks.

### I.

On behalf of the defendants it is claimed that if they had known that the amount of heroin was small they could have made use of this fact. They say it was the duty of the government to have the material weighed and to state the fact accurately in the indictment. They also say that Ray was engaged in "chipping", which is the removal of a part of the drug and substitution of other neutral materials. A further argument is that if they had been able to establish that Ray had probably appropriated for his own use some of the narcotics it would have rendered the allegation in the indictment grossly false and subject to dismissal. We disagree.

It is well settled that the presence and identity of the drug is the thing and that the quantity of it is not important. *United States v. Sudduth,* 458 F.2d 1222 at 1224 (10th Cir. 1972). As to the "chipping" issue: without acknowledging that this kind of evidence would be admissible in order to undermine the credibility of the witness or impeach his credibility, there is no evidence in any event that any such practice was taking place and the defendants had ample opportunity to prove the fact of "chipping" since they knew what the true amount was long prior to the trial. Accordingly, this contention is unavailing.

### II.

Nor do we see any error in the court's refusal to allow Ray to be cross-examined as to the source of marijuana that he had admitted selling. The record shows that Ray was cross-examined fully as to the marijuana trafficking on his part. The only thing that the court refused to allow was questions having to do with the source of the marijuana. We recognize that under Rule 608(b) of the Federal Rules of Evidence acts of misconduct on the part of the witness which are related to his veracity can be used for the purpose of undermining his credibility as a witness. The trial court gave counsel for the defendant a wide latitude in asking these questions and we are unable to see that there was an abuse of discretion in the refusal on the part of the court to allow the questioning having to do with the *source* of the marijuana. There is a point which constitutes a prosecution of the witness for the offense inquired about rather than a testing of his credibility and

when that point is reached the court acts properly in closing down the questioning, for there is no valid interest to be served in shifting the emphasis from the accused persons on trial to the witness. *Cf. United States v. Harding,* 525 F.2d 84 (7th Cir. 1975). After all, he is not the subject of the prosecution.

### III.

■ Finally, the defendants complain that the trial court did not allow them to establish the guilt of the witness Ray of stealing meat from Fort Riley and of passing worthless checks. Defendants say that Rule 608(b) of the Federal Rules of Evidence allows this manner of examination. That rule declares that the credibility of a witness may be attacked in the form of opinion or reputation subject to certain limitations. Subsection (b) further provides that, in the discretion of the court, credibility may be attacked by showing specific instances of the witness's prior misconduct, other than convictions, which bear on veracity. The showing must be in the form of cross-examination of the witness himself; extrinsic evidence may not be introduced. Thus this rule recognizes that collateral transactions can be used to test credibility, but it also recognizes that the court has the discretion to exclude such evidence as not probative of truthfulness or untruthfulness. *See* 3A Wigmore on Evidence (Chadbourne rev.) Sections 981, 983.

The court's rejection of the evidence in question did not constitute an abuse of discretion.

The judgment of the district court is affirmed.