NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2994
_____

UNITED STATES OF AMERICA

v.

ALLEN BROWN,
a/k/a ALLAN BROWN


Allen Brown,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cr-00299-001)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 17, 2013

Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: August 5, 2013  )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Allen Brown appeals from a judgment of conviction in the United States District

Court for the Western District of Pennsylvania on charges of bank robbery, in violation

of 18 U.S.C § 2113(a), and armed bank robbery, in violation of 18 U.S.C. § 2113(d).  We will affirm.

I.

Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts that are necessary to our analysis.

On the morning of October 1, 2007, two men wearing "Scream" masks robbed the S&T Bank in Ford City, Pennsylvania, at gunpoint, absconding with over $24,500.  The robbers fled on foot, stole a parked van, and drove away.  About thirty minutes later, police found the van abandoned by the side of the road, searched it, and found a mask identical to those worn by the robbers.

Trooper Shane Lash of the Pennsylvania State Police led the initial investigation into the bank robbery, with assistance from FBI Special Agent Robert Smith.  As part of this investigation, State Police troopers interviewed potential witnesses, several of whom stated that on the morning of the robbery, they had observed an unoccupied vehicle parked in the same spot where the stolen van had later been found.  The witnesses' descriptions of the vehicle were generally consistent: two described it as a silver Volkswagen Jetta, one as a gray car, one as a silver car, and one as a white car with a blue stripe.  Each witness recalled seeing something hanging from the driver's side mirror, and two witnesses described the car as having white license plates.  Following

2

these interviews, Trooper Lash provided the information to Special Agent Smith, who incorporated the information into a draft affidavit of probable cause for a search warrant.

Before his trial, Brown moved to suppress DNA evidence that had been recovered from the mask in the van. Specifically, Brown argued that the probable cause affidavit contained false information in paragraph 7(c), which read:

> Police interviews of various witnesses following the robbery reported witnessing the stolen Armstrong County School Administration van meet up with a silver Volkswagen Jetta having a possible Maryland registration. Witnesses then observed the silver Jetta drive away from the area where the van was left parked.

At the suppression hearing, Special Agent Smith testified that he could not recall speaking to any witness who had seen the stolen van meet with the Volkswagen Jetta, and Trooper Lash stated that he had never told Special Agent Smith that witnesses had seen the two vehicles together. Special Agent Smith testified that he had not referred to any personal notes when he prepared the affidavit and that he had "no idea" where any such personal notes were located if they existed. Given this apparent lack of supporting evidence, the government conceded that paragraph 7(c) of the affidavit was false.

At the conclusion of the suppression hearing, the District Court granted Brown's motion to suppress, holding that Special Agent Smith had acted with reckless disregard for the truth when he inserted paragraph 7(c) into the probable cause affidavit. After the government appealed, we affirmed and held that the District Court's conclusion was not clearly erroneous. *United States v. Brown*, 631 F.3d 638, 650 (3d Cir. 2011) (*Brown I*).

3

A few days after we issued our decision in *Brown I*, Tom Klingensmith, a private citizen, contacted the Pennsylvania State Police and told them that he had seen the van and the Volkswagen Jetta together shortly after the bank robbery and that he had been interviewed by a law enforcement officer on the day of the robbery. After Special Agent Smith was informed of Klingensmith's statements, he reviewed his personal "drop file" and found an undated piece of paper with notes from his conversation with Klingensmith.

The government then filed a motion with the District Court, asking it to reconsider its grant of Brown's suppression motion. The District Court construed the motion as a request to reopen the suppression hearing, which it granted. After a second suppression hearing, the District Court denied Brown's motion to suppress, and the case proceeded to trial.

At trial, the government introduced the results of a dual-control audit performed by bank employees immediately following the robbery, which showed that the bank robbers stole $24,525.01. The government also offered testimony from a bank official, Stuart Rattner, who testified about the bank's policies for handling robberies, including the audit procedures. Brown objected on hearsay grounds to the introduction of the documents and to Rattner's testimony, but the District Court overruled his objections.

The jury convicted Brown. At sentencing, Brown objected to the District Court's use of the bank audit documents and Rattner's testimony to impose a one-level offense enhancement based on the amount of loss. The District Court overruled Brown's

4

objection and sentenced him to 96 months' imprisonment, to be followed by five years of supervised release.

Brown's timely appeal to this Court followed.

## II.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "[W]e review a district court's decision on a motion to reopen for abuse of discretion." *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002). "[A] district court's resolution of the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error." *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011). A district court's holding with respect to materiality is a legal conclusion that we review *de novo*. *Id.* at 642 n.4.

"We exercise plenary review over Confrontation Clause challenges, but review a nonconstitutional challenge to the admission of hearsay for abuse of discretion." *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012) (internal quotation marks and citation omitted). We review factual findings relevant to the Sentencing Guidelines for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

## III.

Brown argues that the District Court erred by (1) reopening the suppression hearing, (2) denying his motion to suppress, (3) admitting the bank's financial audit into

5

evidence, and (4) calculating the amount of loss at sentencing based on the bank audit report. We disagree.

A.

We turn first to Brown's challenges to the District Court's reopening of the suppression hearing. "The question of whether the government may augment the record at a suppression hearing after a remand following the conviction of the defendant is analogous to the question of whether the government may reopen its case after resting." *Coward*, 296 F.3d at 180. Although we review decisions on motions to reopen for abuse of discretion, we have counseled that courts should be "extremely reluctant to grant reopening." *Id.* (quoting *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000) (*Kithcart II*)).

Here, the District Court did not abuse its discretion when it permitted the government to reopen the suppression hearing. The District Court correctly determined that (1) the government's explanation for its failure to present Klingensmith's testimony at the first suppression hearing was reasonable and adequate, *see Kithcart II*, 218 F.3d at 220; (2) Brown would not be prejudiced by reopening because the case was in the pre-trial phase and he would still have an opportunity to rebut the government's evidence, *see Coward*, 296 F.3d at 181; and (3) the government's new evidence was admissible and highly relevant to the question of whether Special Agent Smith acted with reckless disregard for the truth when he inserted paragraph 7(c) into the probable cause affidavit.

B.

Brown next challenges the District Court's denial of his motion to suppress and claims that the District Court erred when it rejected his *Franks* challenge. We disagree.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), requires the suppression of evidence discovered pursuant to a search warrant if the warrant was obtained using an affidavit that contained a material false statement or omission that was made either knowingly or with "reckless disregard for the truth." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). An affiant acts with reckless disregard for the truth when he or she (1) "recklessly omits facts that any reasonable person would know that a judge would want to know" or (2) "has obvious reasons to doubt the truth of what he or she is asserting." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). A statement or omission is considered "material" if it was necessary to the probable cause determination. *Yusuf*, 461 F.3d at 383.

Here, at Brown's reopened *Franks* suppression hearing, the District Court did not clearly err when it determined that Special Agent Smith did not act with reckless disregard for the truth when he inserted paragraph 7(c) into the probable cause affidavit. The District Court properly found that, taking into account the testimony provided by

Klingensmith, paragraph 7(c) was not false and that it was therefore not a statement made with reckless disregard for the truth. We see no reason to disturb these findings.[1]

C.

Brown next argues that the District Court erred in admitting testimony and records of the bank's financial audit. He claims that the audit records do not qualify as business records under Rule 803(6) of the Federal Rules of Evidence. In the alternative, Brown argues that even if the audit records were not inadmissible hearsay, their introduction at trial violated his Confrontation Clause rights. Neither argument persuades.

Rule 803(6) provides an exception to the rule against hearsay for a record of an event if (1) the record was made "at or near the time" by someone with knowledge, (2) the record was kept in the regular course of business, (3) making the record was a "regular practice" of that course of business, (4) the custodian of the record or "another qualified witness" gives testimony establishing the above conditions, and (5) neither the source of the information nor the circumstances of its preparation "indicate a lack of trustworthiness." Here, as established through Rattner's foundation testimony, the bank audit was prepared on the day of the robbery by employees who were present and who

---

[1] Brown also claims that the District Court erred when it held that certain omissions in the affidavit—that John Wingate was considered a possible suspect, that he had given conflicting accounts of Brown's whereabouts, and that he provided a potentially exculpatory explanation as to what Brown was doing on the morning of the robbery—were not material omissions. We agree with the District Court that, considering the totality of the circumstances, a corrected affidavit that includes this information still demonstrates probable cause.

8

had personal knowledge of the audit results. Preparing such audit reports was a regular practice in cases of robbery, and the records were kept in the ordinary course of business. We find no abuse of discretion by the District Court in its decision to admit the bank audit under Rule 803(6).

In the alternative, Brown argues that the District Court's admission of the audit records violated his rights under the Confrontation Clause. "[I]n the Confrontation Clause context, business and public records 'are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.'" *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2720 (2011) (Sotomayor, J., concurring) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)). Here, the audit record was created for administration of the bank's affairs after the loss (including financial reporting and insurance claims), pursuant to established bank procedures, and therefore is not testimonial and does not implicate the Confrontation Clause. The District Court's admission of the records was not error.

## D.

Finally, Brown argues that the District Court committed clear error by relying upon the bank audit report to enhance his sentence by providing a one-level increase in the offense level for the amount of loss.

Although, as a general matter, "the Federal Rules of Evidence do not apply in sentencing proceedings," *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002), "information relied upon at sentencing must have 'sufficient indicia of reliability to support its probable accuracy,'" *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (quoting *United States v. Warren*, 186 F.3d 358, 364-65 (3d Cir. 1999)). "[T]he Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007).

Here, the reliability of the bank audit report was shown by Rattner's foundation testimony, which explained the bank's standard dual-control procedures that were used in conducting the audit. We find no clear error in the District Court's decision to consider the audit report at sentencing.

IV.

For the reasons set forth above, we will affirm the District Court's judgment of conviction and sentence.