**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 13-3217

———————————

UNITED STATES OF AMERICA,

v.

JANICE D. REY,

Appellant

———————————

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas
(No. 3-11-cr-00038-001)
District Judge:  Hon. Curtis V. Gomez

———————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8, 2014

Before:  CHAGARES, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Opinion Filed: December 30, 2014)

———————————

OPINION[*]

———————————

Omodare B. Jupiter, Esq. [ARGUED]
Office of Federal Public Defender
1115 Strand Street, Suite 201
Christiansted, VI 00820

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Gabriel J. Villegas, Esq.
Office of Federal Public Defender
P.O. Box 1327, 51B Kongens Gade
St. Thomas, VI 00804
        Attorneys for Appellant

Kim. L. Chisholm, Esq. [ARGUED]
Everard E. Potter, I, Esq.
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802
        Attorneys for Appellee

CHAGARES, Circuit Judge.

Janice D. Rey was convicted by a jury of various offenses and raises two issues on appeal. Rey argues first that the District Court erred in reopening a suppression hearing to admit search warrants into evidence and second that there was insufficient evidence for the jury to find her guilty of international money laundering. For the reasons that follow, we will affirm as to both issues but will vacate the District Court's sentencing order as to counts 27-52 and remand for resentencing consistent with 18 U.S.C. § 1957(b)(1).

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition. Rey was the owner and Chief Executive Officer of Paramount Group, LLC. Appendix ("App.") 301. She opened a store front location called "Rey Financial" to attract investors to Paramount Group. App. 417. She told investors, among other things, that Paramount Group traded in currencies, commodities, and precious stones, App. 444, that Paramount Group was associated with international energy conglomerate

2

Halliburton, App. 544, and that it counted a former president or vice-president among its investors, App. 576. Most importantly, Rey told investors that any funds they invested with Paramount Group were totally guaranteed: the funds would never leave the company's bank account, and no matter the fate of the investment, investors would get their principal back. App. 444.

Many individuals invested hundreds of thousands of dollars with Paramount Group. See App. 526, 556, 611-12, 631. Rey transferred their funds from Paramount Group's bank accounts to several other bank accounts for her own purposes. App. 675-85. In September 2009, Rey transferred $1 million from a Paramount Group bank account to two separate accounts in Hong Kong. App. 355-56. The money was never invested; it was either spent or transferred back to individuals in the United States. App. 758.

When investors asked Rey about the status of their money, Rey attempted to reassure them by telling them their funds were held up by the Federal Reserve or a market crash. App. 456-57. She also told them that she was opening an offshore bank where they could shelter their deposits from United States taxes. App. 560, 623. Eventually, her investors lost faith and reported Paramount Group to the IRS. An investigation and indictment followed.

Prior to trial, Rey moved to suppress all evidence obtained from a search of the Rey Financial office.[1]  She argued that the Government failed to obtain a federal search warrant from a federal magistrate and that the affidavit accompanying the Government's search warrant lacked particularity and was not based on probable cause.  App. 58–59.  She attached the Government's search warrant and affidavit to her motion.  App. 66-100.  The Court held an initial hearing on the motion on January 25, 2013.

The Government called two witnesses at the first hearing:  Agent James McCall, director of special investigations for the Office of the Attorney General, and Agent Stephen Wagner of the Internal Revenue Service's Criminal Investigation Division.  Agent McCall testified that he spoke with three people who had invested with Rey but had never received the promised returns or refunds.  App. 116-17.  He applied for a search warrant from Judge Jason Carroll in the Superior Court for the Virgin Islands.  App. 117.  Based on Agent McCall's affidavit, Judge Carroll issued a search warrant for Rey's office.  App. 119-20.  Agent McCall identified both the search warrant and the accompanying affidavit during his testimony.  App. 118-19.

Rey called no witnesses, and the Government rested its case without entering the search warrants into evidence.  The District Court pointed out that neither the search warrants nor the inventories the Government had prepared when executing the warrants were in evidence.  App. 148-49.  The Government moved to reopen the hearing and enter

---

[1] Rey also sought to suppress evidence collected from a house located at Frydenhoj #1-25, Gold Hill Road, St. Thomas.  The District Court granted her motion as to the Frydenhoj house, so it is not in issue on appeal.

each of the documents into evidence. Rey objected. The Court took the matter under advisement.

At a follow-up hearing on April 1, 2013, the Court heard additional argument on whether the Government should be allowed to reopen its case and move the documents into evidence. App. 199. The Government's only explanation for its failure to offer the warrants into evidence was that it was an "inadvertent oversight." App. 228. The District Court asked Rey's counsel what prejudice would result from reopening the suppression hearing. App. 216. Rey's counsel identified no prejudice related to the Rey Financial office warrant. App. 218. Thereafter, the District Court determined that the Government's oversight was a reasonable explanation for its failure to offer the search warrant and that reopening the suppression hearing to accept such evidence would not prejudice Rey. App. 229. The District Court then found the warrant for Rey's office was sufficiently particular and based on probable cause. App. 230. It therefore denied Rey's motion to suppress as to evidence found at Rey's office. App. 4

On April 2, 2013, Rey stood trial in the District of the Virgin Islands for conspiracy to commit wire fraud, wire fraud (eight counts), money laundering with intent to promote wire fraud (seven counts), money laundering with intent to conceal wire fraud (eight counts), money laundering with intent to avoid reporting requirements (twenty-six counts), international money laundering (two counts), and tax evasion (four counts). App. 772-85. Two days later, the jury found her guilty on all counts. The District Court sentenced her to 125 months of imprisonment on the fraud and money laundering counts, to be served concurrently with 60 months of imprisonment on the tax evasion counts,

plus three years of supervised release.  App. 7-8.  The District Court also imposed

restitution in the amount of $3,006,260.00 to the victims, $550,681.31 to the Virgin

Islands, and a special assessment of $5,200.00.  App. 10.

Rey timely appealed.

II.[2]

We review a district court's decision on a motion to reopen for abuse of discretion.

United States v. Coward, 296 F.3d 176, 180 (3d Cir. 2002) ("The question of whether the

government may augment the record at a suppression hearing . . . is analogous to the

question of whether the government may reopen its case after resting.  Such decisions are

traditionally within the discretion of the district court.").  We have said that a party

moving to reopen a hearing "should provide a reasonable explanation for failure to

present [its] evidence initially."  Kithcart, 218 F.3d 213, 220 (3d Cir. 2000) (quotation

marks and citation omitted).  Nonetheless, "[w]hen faced with a motion to reopen, the

district court's primary focus should be on whether the party opposing reopening would

be prejudiced if reopening is permitted."  Id.; see also United States v. Smith, 751 F.3d

107, 114 (3d Cir. 2014) ("When determining whether to reopen a proceeding, the

paramount factor for a district court to consider is whether reopening, if permitted, would

prejudice the party opposing it.").

"A critical factor in evaluating prejudice is the timing of the motion to reopen."

Coward, 296 F.3d at 181.  If the motion to reopen "comes at a stage in the proceedings

---

[2] The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

6

where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury." United States v. Blankenship, 775 F.2d 735, 741 (6th Cir. 1985). In Blankenship, the Court of Appeals for the Sixth Circuit held that the party opposing reopening could not demonstrate prejudice where the evidence to be offered was not a surprise and, in any case, the party could have asked for an opportunity to meet the new evidence. Id. Similarly, in United States v. Smith, we held that opponents of reopening were not prejudiced when they had advance notice of the evidence to be offered and had a chance to rebut the evidence or offer new evidence of their own. 751 F.3d at 114.

Here, we agree with the District Court that Rey suffered no prejudice from the reopening. The Government made its motion to reopen within moments of closing its case, and the District Court reopened the hearing before the case had gone to trial — let alone to the jury. It does not appear that Rey's counsel had an opportunity to rebut the warrant once it was admitted, but neither did he ask for such an opportunity. Rey knew about the ultimately-admitted warrant long before the suppression hearing. She attached a copy of the same warrant to her motion to suppress. There was no surprise.

The Government's explanation for its failure to offer the evidence in the first place — "it was an oversight" — is less than compelling. However, given that it had marked the warrant as an exhibit and used it during witness examination, App. 119-22, the explanation was not so unreasonable that a District Court could not, in light of the low

7

risk of prejudice, elect to reopen the suppression hearing. In sum, the District Court did not abuse its discretion in reopening the suppression hearing.

III.

Rey argues that her conviction for international money laundering should be vacated because there was insufficient evidence that she had transported funds with the intent to conceal or disguise their nature, location, source, ownership, or control.

When a defendant appeals a conviction based on the sufficiency of the evidence, "[w]e review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (quotation marks and citation omitted). "Under this particularly deferential standard, we must be ever vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting our judgment for that of the jury." Id. (quotation marks and citation omitted). "[A] reviewing court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. 120, 133 (2010) (quotation marks omitted).

International money laundering under 18 U.S.C. § 1956(a)(2)(B)(i) occurs when an individual "attempt[s] to transport funds from a place in the United States to . . . a place outside of the United States . . . knowing that the . . . funds involved in the transportation . . . represent the proceeds of some form of unlawful activity and knowing that such transportation . . . is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Cuellar v. United States, 553 U.S. 550, 561 (2008) (quotation marks omitted). To obtain a conviction under 18 U.S.C. § 1956(a)(2)(B)(i), the Government was required to prove that Rey (1) attempted to transport funds from the United States to Hong Kong, (2) knew that those funds represented the proceeds of some form of unlawful activity, and (3) knew that such transportation was designed to conceal or disguise the nature, location, source, ownership, or control of the funds.

Rey bases her argument on Cuellar, in which the Supreme Court, confronted with a defendant who had attempted to smuggle money into Mexico for drug cartels, held that the defendant's conviction could not be sustained where "the Government failed to introduce any evidence that the reason drug smugglers move money to Mexico is to conceal or disguise a listed attribute of the funds." 553 U.S. at 567. The Court emphasized that a conviction under 18 U.S.C. § 1956(a)(2)(B)(i) "requires proof that the purpose — not merely effect — of the transportation was to conceal or disguise a listed attribute." Id.

Here, the Government offered evidence that Rey transferred investors' funds to Hong Kong bank accounts in the name of corporations that had no announced ties to

9

Paramount Group. The jury could infer that she wanted it to be difficult for Paramount Group investors to discover the Hong Kong corporations, and it could infer that Rey wired the funds to these corporations for the purpose of concealing them from her investors before they were spent or re-routed back to Rey and her co-conspirators in the United States. Viewed in the light most favorable to the Government, there was ample evidence to support Rey's conviction for international money laundering.

IV.

The District Court sentenced Rey to 125 months of imprisonment on the federal counts. But "Money Laundering With Intent to Avoid Reporting," counts 27-52, is subject to a maximum sentence of 120 months. 18 U.S.C. § 1957(b)(1) ("[T]he punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment of not more than ten years or both."). Neither Rey nor the Government noted the discrepancy in their briefs.

Ordinarily, "an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). "However, the waiver rule yields in 'extraordinary circumstances.'" United States v. Andrews, 681 F.3d 509, 532 (3d Cir. 2012) (quoting United States v. Albertson, 645 F.3d 191, 195 (3d Cir. 2011)). "In determining whether a case presents 'extraordinary circumstances,' we consider three factors: (1) whether there is some excuse for the [appellant's] failure to raise the issue in the opening brief; (2) the extent to which the opposing party would be prejudiced by our considering the issue; and (3) whether failure to consider the argument would lead to a miscarriage of justice or

10

undermine confidence in the judicial system." Andrews, 681 F.3d at 532 (quotation marks and citation omitted). We found such extraordinary circumstances in Andrews, where although the appellant had provided no compelling reason for his failure to raise a sentencing issue in his opening brief, the Government would suffer no prejudice from consideration of the issue, and the District Court had committed a plain error in exceeding the statutory-maximum sentence. Id.

Here, as in Andrews, the Government will suffer no prejudice from our consideration of the sentencing defect. Indeed, it does not oppose vacating and remanding for resentencing and concedes that the 125-month sentence exceeds the statutory maximum. Under the circumstances, Rey's failure to raise the issue in her opening brief is no obstacle to our considering it. The sentence must be corrected.

V.

For the foregoing reasons, we will affirm the District Court's evidentiary ruling and uphold the jury's verdict. We will vacate the District Court's sentence as to counts 27-52 and remand for resentencing on those counts.